# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-01511-SCT

*O. R. GARRETSON, AND WIFE, CAROLYN C.
GARRETSON, HARRY F. GARRETSON AND
WIFE, JEAN H. GARRETSON*

*v.*

*MISSISSIPPI DEPARTMENT OF
TRANSPORTATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/18/2012 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| TRIAL COURT ATTORNEYS: | A. MALCOLM N. MURPHY |
| | K.C. HIGH TOWER |
| | JACK H. PITTMAN |
| COURT FROM WHICH APPEALED: | GREENE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | A. MALCOLM N. MURPHY |
| ATTORNEYS FOR APPELLEE: | JACK H. PITTMAN |
| | CHRISTOPHER M. HOWDESHELL |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 11/20/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND COLEMAN, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     The Mississippi Transportation Commission ("MTC") procured some land from the Garretsons via eminent domain to construct a bypass in Greene County. The Garretsons later filed a complaint against the Mississippi Department of Transportation ("MDOT"), alleging that the bypass construction had caused silt to flood onto their remaining land, damaging their timber. MDOT filed a motion for summary judgment and argued that it was immune

under Mississippi Code Section 11-46-9(1), subsections (d) (discretionary-function immunity) and (p) (design immunity). We agree that MDOT is immune from liability under subsection (p) and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     MTC filed a complaint to condemn some of the Garretsons' land, and the Greene County Special Court of Eminent Domain held a hearing on MTC's complaint. The jury awarded the Garretsons $50,000 as just compensation for their land, and the trial judge filed the judgment on March 11, 2004.

¶3.     The Garretsons subsequently served a Notice of Claim on "MDOT and/or MTC."[1] In their notice, the Garretsons alerted MTC and MDOT that they planned to bring a claim for "damages as a result of silt flooding that has occurred to their land adjacent to the North side of the new overpass that has been constructed over the existing State Highway No. 63." The Garretsons further alleged that MDOT "ha[d] trespassed upon [their land] and has and is causing damage."

¶4.     The Garretsons listed the date of loss as "May 20, 2004 and continuing." The Garretsons alleged it was on that date that it:

> became apparent . . . that the silt fence and other structures erected by MDOT were possibly going to be ineffective and that silt was going to flood their property and cause damage to the standing timber. It also became apparent that the entire drainage of "Cemetery Hill" had been changed so that by various drain structures the drainage had been shifted to one collection point

---

[1]There is no date on the actual notice, but the Garretsons' complaint alleges that they served the notice on May 12, 2005. It appears that the project construction was ongoing by at least early 2004, as MTC had acquired "immediate title and possession" of the Garretsons' property in 2000.

2

adjacent to [the Garretsons'] land for the entire hill lying East of present State Highway No. 63. As a result of the change of the natural drainage silt has flooded the lands of the Garretsons and has killed, deadened, damaged and destroyed the standing timber, young timber and other timber of value to the Garretsons. The silt flooding is continuing and the damage to the land is continuing as well as the damage to the timber.

The Garretsons alleged that, as a result of MDOT's actions, they had had to seek the services of a forester and an attorney and had to pay reforestation expenses. The Garretsons described MDOT's actions as "deliberate," "callous," and "totally indifferent" and stated that they were entitled to recover for mental distress. The Garretsons concluded by stating that they had "suffered substantial compensable damages due to the [tortious] acts of MDOT and/or MTC," and that they sought damages not exceeding the policy limits of any liability policies in effect, or $500,000 each, whichever was greater.

¶5.    The Garretsons followed up their notice with their complaint against MDOT on August 1, 2005. Their complaint reiterated the claims in their notice. In sum, the Garretsons alleged that:

> [P]rior to May 20, 2004, the Mississippi Department of Transportation [caused] a four lane highway roadway and overhead bridge to be constructed on land [parallel] and adjacent to lands owned by the Garretsons. After construction of the highway roadway beds and bridges, silt began to flood onto the lands of the Garretsons. On May 20, 2004, all of the preventive measures of [MDOT] failed and silt flooded from the right-of-way lands of [MDOT] onto the timber lands of the Garretsons [which caused] the damage herein complained of. MDOT caused silt fences and other structures to be erected, but all systems failed.
>
> . . .
>
> It was known to MDOT prior to the construction of the highway and bridges that the drainage would be changed, channeled to one collection point and that silt flooding would cause damage to the [Garretsons'] lands and timber. The damage by silt flooding was deliberately caused by MDOT and concealed

3

from the Garretsons. MDOT is also guilty of gross negligence in the construction and change of drainage.

The Garretsons asked for (1) a permanent injunction to prevent the silt flooding; (2) a judgment for "all damages permitted by Section 95-5-10,"[2] including expert-witness fees, attorneys' fees, and costs; (3) a judgment for the damaged and destroyed timber in the amount of $55,051; and (4) a judgment of $500,000 for "the anger, outrage and mental upset" suffered as a result of MDOT's "deliberate, callous and indifferent" actions. MDOT answered the Garretsons' complaint, and the parties engaged in written discovery.

¶6. MDOT filed a Motion for Summary Judgment and argued that it was exempt from liability for "suits of this type" under Mississippi Code Section 11-46-9(1), subsections (d) and (p). MDOT attached three exhibits to its motion: (1) an itemization of undisputed facts; (2) an affidavit from MDOT Roadway Design Division Engineer C. Keith Purvis; and (3) the judgment from the Greene County Special Court of Eminent Domain.[3]

¶7. More than four years later, the Garretsons responded to MDOT's motion. The Garretsons disputed MDOT's first statement of undisputed fact and stated that "the road construction was **NEW** construction and was not Reconstruction and/or widened." The Garretsons also took issue with MDOT's failure to attach the statement of values from the

---

[2] "(1) If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars ($250.00) per acre . . . " Miss. Code Ann. § 95-5-10(1) (Rev. 2013).

[3] MDOT also argued in its motion that it was entitled to summary judgment based on the eminent-domain judgment entered against the Garretsons – a *res judicata* argument of sorts. But the trial judge did not address that argument in his order granting summary judgment, and the parties do not appear to raise that argument again on appeal.

4

eminent domain action, in which it was stated that the "damage to the remainder [of the property] is $0.00." The Garretsons attached the statement of values as Exhibit 1 to their Response.

¶8.     The Garretsons' response to MDOT's argument that it was immune under Section 11-46-9(1), subsections (d) and (p), is hard to follow:

> [T]he [Plaintiffs] deny that the Mississippi Department of Transportation is entitled to immunity under §11-46-9(d) (p) in that this is not a tort claim action.  At commencement of this cause of action, which is an ongoing cause of action, the [Plaintiffs] did make allegations of Tort Claim [sic], but also made allegations of "Negligence," "Trespass" and a request for "Injunction."

The Garretsons argued further that *McLemore v. Missississippi Transportation Commission*, 992 So. 2d 1107 (Miss. 2008), supported their position that they could maintain their claims.

¶9.     The Garretsons also objected to C. Keith Purvis's affidavit because it failed to state that the highway design was "in conformity" [with current engineering or design standards]; rather, it used the word "indicating" that the plans were in conformity.  The Garretsons attached to their response an affidavit from O.R. Garretson to "dispute" Purvis's affidavit.  Finally, the Garretsons asserted that "the negligence of permitting the silt flooding and trespass is a separate cause of action all of which occurred after the taking which is prohibited by Article 3, Section 17 of the Mississippi Constitution."

¶10.    The trial judge held a hearing on MDOT's motion, and he entered an order granting the motion one week later.  The order does not detail the trial judge's reasoning, but it does state that he "specifically [found] that the Defendant . . . [was] entitled to immunity under Mississippi Code Annotated 11-46-9(1)(d) and (p)."

¶11.    The Garretsons now appeal to this Court, arguing:

(1) The Court erred by Granting Summary Judgment based on a discretionary function and design function §11-46-9(1)(d)(p) and the Court further erred in dismissing all of the remaining causes of action for (1) negligence, (2) trespass and all damages under §95-5-10, and (3) injunction and (4) damages. In effect the Court found the cause to be controlled by the Miss. Tort Claim Act and dismissed all [the] other remaining causes of action as if 'Frasier's Octopus' were alive and well; and

(2) Article 3, Section 17, of the Mississippi Constitution prevails over the Mississippi Rules of Civil Procedure addressing the guarantees between the Government and its Citizens. Article 3, Section 17 of the Constitution, is self executing.

¶12. For clarity, we restate the issues as: (1) whether the circuit judge correctly granted summary judgment to MDOT; and (2) whether Article 3, Section 17 of the Constitution provides the Garretsons any relief.

## STANDARD OF REVIEW

¶13. This Court conducts a de novo review when deciding whether the trial court properly granted a motion for summary judgment. *Conrod v. Holder*, 825 So. 2d 16, 18 (Miss. 2002). And the application of the Mississippi Tort Claims Act ("MTCA") is a question of law that is also reviewed de novo. *Little v. Mississippi Dep't of Transp.*, 129 So. 3d 132, 135 (Miss. 2013).

## ANALYSIS

**I.** **The trial judge properly granted MDOT's motion for summary judgment.**

¶14. As mentioned above, the trial judge specifically found in his order granting summary judgment that MDOT was entitled to immunity under Mississippi Code Section 11-46-9(1), subsections (d) and (p). We agree with the trial court and find that MDOT is immune under Section 11-46-9(1)(p). Because we find immunity under subsection (p), we find it

6

unnecessary to address MDOT's immunity under subsection (d).  *See, e.g.,* ***Fortenberry v.***

***City of Jackson***, 71 So. 3d 1196, 1204 (Miss. 2011) ("Applicability under *any one* of the

provisions of Mississippi Code Section 11-46-9 provides immunity for a governmental entity

and its employees.") (emphasis added).

## A. Section 11-46-9(1)(p)

¶15.    The trial judge found that MDOT was immune under Mississippi Code Section 11-46-

9(1)(p), which states:

> (1) A governmental entity and its employees acting within the course and
> scope of their employment or duties shall not be liable for any claim:
> . . .
>> (p) *Arising out of a plan or design for construction* or
>> improvements to public property, including, but not limited to,
>> public buildings, *highways*, *roads*, streets, *bridges*, levees, dikes,
>> dams, impoundments, drainage channels, diversion channels,
>> harbors, ports, wharfs or docks, *where such plan or design has*
>> *been approved in advance of the construction or improvement*
>> *by the legislative body or governing authority of a governmental*
>> *entity or by some other body or administrative agency,*
>> *exercising discretion by authority to give such approval, and*
>> *where such plan or design is in conformity with engineering or*
>> *design standards in effect at the time of preparation of the plan*
>> *or design*[.]

Miss. Code Ann. § 11-46-9(1)(p) (Rev. 2012) (emphasis added).  Here, MDOT submitted

an affidavit in support of its motion for summary judgment from its Roadway Design

Division Engineer C. Keith Purvis.  In it, Purvis testified that "[t]he plans or designs for

Project #SDP-0002-02(060)PH3 on SR-63 were approved in advance of construction by [the]

Roadway Design Division on 7/9/03, indicating that they conformed with the standards for

design established by the American Association of State Highway and Transportation

Officials in place . . . at the time they were drafted."

7

¶16. We are not persuaded by the Garretsons' attempt to disavow any negligent-design claim on appeal, as the crux of their complaint clearly is that the bypass was negligently designed. For example, the Garretsons explicitly stated in their complaint that:

> *After* construction of the highway roadway beds and bridges, silt began to flood onto the lands of the Garretsons . . . . It also became apparent that *the construction of the roadbed and bridges caused the entire drainage of "Cemetery Hill" to be changed* so that by various drain structures constructed by MDOT the *drainage had been shifted* to one collection point adjacent to the [Garretsons'] property line. *As a result of the change of the natural drainage*[,] silt has flooded the lands of the Garretsons . . . .

(Emphasis added.) And, in his affidavit submitted in response to MDOT's motion, O.R. Garretson testified that:

> Prior to the construction of the subject road there was absolutely never any silting or drainage of any consequence to the subject property and silting had never occurred. In fact, the drainage from the hill was to the East and on the South side of State Highway No. 63, away from the subject land . . . . The construction of the highway radically changed and altered the drainage of the hill and was achieved by the installation of numerous pipes and drains which shifted an enormous amount of the water and silt on to the [plaintiffs'] land.

Finally, in their reply brief, the Garretsons state that "this case is and was about the change of grade that [caused] silt flooding and damage on [the Garretsons'] property."

¶17. Based on the language above, we conclude that, although the Garretsons did not use the word "design," the crux of their complaint is that the design of the bypass itself changed the naturally occurring drainage and caused silt to flow onto their land – which had not occurred before, according to O.R. Garretson himself. We affirm the trial judge's finding that MDOT is immune under subsection (p).

### B. The Garretsons' Specific Causes of Action

8

¶18. The crux of the Garretsons' argument on this issue is that the trial judge erred when he granted MDOT summary judgment on *all* the claims in their complaint. Specifically, the Garretsons argue that they "filed a multi-count complaint which was specific and detailed each count and the damages arising therefor. The Trial Court should not have dismissed all of [the] claims because the Trial Court insulated MDOT from all claims by sustaining [the exemptions] under §11-46-9(1)(d)(p)."

¶19. We disagree with the Garretsons' argument, as a cursory review of their complaint reveals that all of their causes of action sound in tort. In other words, even though they asked for costs of their timber and for all damages permitted by Section 95-5-10, all of their causes of action center on the alleged "[tortious] acts" of MDOT. And Mississippi Code Section 11-46-7 states that "(1) The remedy provided by this chapter against a governmental entity or its employee is *exclusive of any other civil action or civil proceeding by reason of the same subject matter* against the governmental entity or its employee or the estate of the employee *for the act or omission which gave rise to the claim or suit*." (Emphasis added.)

¶20. We find Section 11-46-7 unambiguous – any claim for money damages arising out of the State's tortious acts must be brought under the MTCA. And here, the trial court was correct in finding that MDOT is immune under the MTCA. As for the Garretsons' claim for an injunction, the Legislature clearly has stated that a plaintiff cannot procure an injunction against the State for actions sounding in tort:

> The Legislature of the State of Mississippi finds and determines as a matter of public policy and does hereby declare, provide, enact and reenact that the "state" and its "political subdivisions," . . . *are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune*

9

*from suit at law or in equity on account of any wrongful or tortious act or omission*[.]

Miss. Code Ann. § 11-46-3(1) (Rev. 2012) (emphasis added). Although there is a waiver of this immunity in Section 11-46-5 for claims for money damages arising out of the State's alleged tortious conduct, there is no such waiver of immunity for injunctive relief in this context. Thus, the trial judge was correct when he granted MDOT summary judgment on *all* of the Garretsons' claims.

¶21. The Garretsons argue that *MacDonald v. Mississippi Department of Transportation*, 955 So. 2d 355 (Miss. Ct. App. 2006), is applicable and supports their argument that they should be able to pursue some of the claims in their complaint. We disagree. There, the Court of Appeals did state that:

> [W]here there are separate claims, that single [immunity] provision may or may not be sufficient to create immunity as it applies to those other claims. Resolution of the question as to whether a single finding of immunity equates to immunity as to each and every claim raised depends on the facts of the case and the relevant claims. Therefore, such an issue must be decided on a case-by-case basis . . . . Succinctly put, immunity as to one claim does not *necessarily, as a matter of law*, equate to immunity for all claims.

*Id.* at 361-62 (emphasis added).

¶22. But the plaintiff in *MacDonald* had made other claims along with her negligent-design claims – for instance, she made a claim for negligent maintenance and improvement, as well as a claim for failure to warn of a dangerous condition. Thus, some of her claims fell outside the realm of road design. *MacDonald,* 955 So. 2d at 357. Here, after carefully reviewing the "facts of [this] case and the relevant claims," we find that all of the Garretsons' causes of action are barred by the design exemption.

10

## II.     The Garretsons did not plead a taking.

¶23.    In their second point on appeal, the Garretsons argue that a taking claim brought under Article 3, Section 17 of the Mississippi Constitution[4] trumps the provisions of the MTCA. But because the Garretsons did not plead a taking in their complaint, we do not address the merits of this issue.

¶24.    Even a liberal reading of the Garretsons' complaint would not and did not put MDOT on notice of a constitutional taking claim. The words "taking" or "eminent domain" are nowhere to be found, nor is any sort of citation of or reference to the Takings Clause. Rather, the Garretsons repeatedly used phrases like "negligence," "trespass," and "[tortious]." The first time the Garretsons mentioned Article 3, Section 17, was in their response to MDOT's motion for summary judgment. And despite the passage of almost five years between MDOT's motion and the Garretsons' response, there is no evidence in the record that the Garretsons ever attempted to amend their complaint to add a taking claim.

¶25.    The Court of Appeals' opinion in *B&W Farms v. Mississippi Transportation Commission*, 922 So. 2d 857 (Miss. Ct. App. 2006), is directly on point and instructive. There, the plaintiffs asserted that the defendants (MTC and its contractor) "unlawfully and negligently diverted and obstructed the natural flow of surface water," and that they "had a duty to . . . avoid the negligent flooding of the crops . . . while constructing and improving the said Highway." *Id.* at 858.

---

[4]"Private property shall not be taken *or damaged* for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law . . . . " Miss. Const. art. 3, § 17 (emphasis added).

11

¶26. MTC filed a motion for summary judgment. *Id.* During the hearing on the motion, counsel for the plaintiffs argued that the term "unlawfully" must "certainly refer" to a violation of Article 3, Section 17, under the notice-pleading doctrine. *Id.* But the trial judge disagreed and found that the term "unlawful" was insufficient to put MTC on notice that the plaintiffs were asserting a constitutional claim. *Id.* The plaintiffs appealed and argued that the trial judge erred by strictly construing their complaint as "being limited to only a theory of negligence." *Id.*

¶27. The Court of Appeals affirmed, beginning its analysis with a summary of Mississippi's notice-pleading jurisprudence:

> Although Rule 8 of the Mississippi Rules of Civil Procedure "has eliminated the technical forms of pleadings required in years past, notice pleadings are still required to place the opposing party on notice of the claim being asserted."
> . . .
> In the complaint . . . B & W asserted that the "[d]efendants ... unlawfully and negligently diverted and obstructed the natural flow of surface water which flowed from the west to the east under U.S. Highway No. 61." *The complaint is void of any references to the Mississippi Constitution or to a taking of private property for public use.*
> . . .
> *The first specific mention of a violation of the takings clause did not come until . . . B & W filed its response to the MTC's motion for summary judgment.* We agree with the finding of the trial court that "the word 'unlawful' is not so comprehensive as to specifically involve a constitutional claim in this instance *because all contentions point to negligence.*" Moreover, if B & W sought relief under Article 3, Section 17 of the Mississippi Constitution, at least some notice of this claim should have been given *before B & W filed its response to the motion for summary judgment, (especially since the complaint was filed nearly seven years earlier).*

*Id.* at 858-59 (citations omitted) (emphasis added). We find this reasoning persuasive and reach the same result here.

¶28. The Garretsons' reliance on this Court's opinion in *McLemore v. Mississippi Transportation Commission*, 992 So. 2d 1107 (Miss. 2008), is, again, misplaced. This Court did indeed hold in *McLemore* that the McLemores could bring their claims against MTC in spite of the provisions of the MTCA.[5] *Id.* at 1111. But it was clear there that the McLemores had pleaded a taking:

> Dennis and Tammy McLemore filed suit in the Circuit Court of DeSoto County against the Mississippi Transportation Commission (MTC) and Talbot Brothers Contracting Co., Inc., *alleging a taking without just compensation in violation of the Mississippi and U.S. Constitutions* due to flooding and siltation on real property from negligence in the construction of a highway.
> . . .
> *Moreover, the parties agree that the McLemores provided notice of the constitutional claims.*

*Id.* at 1107-1109 (emphasis added).

¶29. Finally, the Garretsons' last-ditch effort to argue that Article 3, Section 17 is "self-executing" – *i.e.*, that they did not have to plead it – is unconvincing. It is true that this Court, in *Parker v. State Highway Commission*, 162 So. 162 (Miss. 1935), stated that "[S]ection 17, Constitution of 1890, is self-executing." *Id.* at 164. But a reading of the opinion as a whole reveals that the term "self-executing" as used there meant that the Legislature could not limit the right – not that a plaintiff did not have to plead it. This interpretation is evidenced by the sentence immediately following the "self-executing" sentence relied on by the Garretsons:

---

[5] "[T]he MTC asserts that the Mississippi Tort Claims Act provides the exclusive remedy for the McLemores and that they failed to plead it; therefore summary judgment was proper. However, we disagree." *Id.* at 1109.

13

Prior to the adoption of this Constitution the Legislature could limit a landowner's recovery to compensation for the land appropriated for public use, but as section 17 now exists it is quite clear that any effort on the part of the Legislature to shield the government or any arm thereof from payment of damages occasioned by it on the appropriation of land would be futile and of no effect. Before our Constitution was adopted, sections similar to the one here under consideration had been construed by the courts of other states as being self-executing. Section 17 of the constitution is mandatory.

*Id.* at 164.

¶30.   In sum, the Garretsons failed to plead a taking claim in their complaint, and we find that they are barred from attempting to argue that theory now.

## CONCLUSION

¶31.   The trial judge was correct when he found that MDOT is immune from liability in this case under subsection (p) of Section 11-46-9(1).  And because the Garretsons pleaded only claims that fall under this exemption, we find that the trial judge was correct in granting MDOT summary judgment on all of their claims.  Finally, the Garretsons cannot pursue a constitutional taking theory because they failed to plead it.

¶32.   **AFFIRMED**.

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, KING AND COLEMAN, JJ., CONCUR.  PIERCE, J., NOT PARTICIPATING.**